United States District Court
Southern District of Texas
FILED

MAR 2 9 2011

CLERK OF COURT
LAREDO DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
**LAREDO DIVISION**

HEI RESOURCES, INC.,            )
                                )
    Plaintiff,              )     Civil Action No. 5:09-CV-124
                                )
v.                              )
                                )     **MEMORANDUM OPINION AND ORDER**
S. LAVON EVANS, JR. OPERATING   )
CO., INC; S. LAVON EVANS, JR.;  )
E & D SERVICES, INC.; and       )
WAUSAU DEVELOPMENT CORP.,       )
                                )
    Defendants.             )

             **     **     **     **     **

    Defendants have filed a Motion for Leave to File an Amended Answer and Counterclaim to HEI Resources' Amended Complaint [Record No. 45]. Plaintiff has filed a Response [Record No. 48] and Defendants have filed a Reply [Record No. 49]. This motion is now ripe for decision.

**I. PROCEDURAL HISTORY**

    Plaintiff HEI Resources, Inc. (hereinafter "HEI Resources") filed its complaint in November of 2009 averring the following counts against Defendants S. Lavon Evans, Jr. Operating Co., Inc. ("Evans Operating"), S. Lavon Evans, Jr. ("Evans"), E & D Services, Inc. ("E & D Services"), and Wausau Development Corp. ("Wausau"): breach of contract, civil conspiracy and alter ego/piercing the corporate veil. [Record No. 1]. Defendants properly filed an answer that did not include any counterclaims or claims against a third-party in January of 2010. [Record No. 9]. Well after the

deadline articulated in Rule 14 restricting the filing of a third-party complaint, Defendants filed a document that was improperly styled "Third Party Plaintiffs [sic] Original Third Party Complaint" against Plaintiff and four other third-party defendants for various counts, including breach of contract and quantum meruit which were meant to offset damages averred in Plaintiff's original complaint, breach of contract – failure to pay a working interest owner, fraud, negligent misrepresentation, business disparagement, and tortious interference with an existing contract. [Record No. 14]. Following Plaintiff's motion to strike portions of Defendants so-called third-party complaint [Record No. 19], Defendants made a "Motion for Leave to File an Amended Third Party [sic] Complaint, Counterclaim, and Response to HEI Resources, Inc.'s Motion to Dismiss" [Record No. 21] which sought to drop four of the seven counts in Defendants' so-called third-party complaint [Record no. 14]. Defendants also acknowledged, for the first time, that some of the claims were counterclaims, permissible and governed under Rule 13, rather than third-party complaints which, pursuant to Rule 14, requires the complaint be served "on a nonparty who is or may be liable to [defendants] for all or part of the claim against it." Fed. R. Civ. P. 14.

On July 14, 2010, this Court granted Defendants' motion for leave to amend its third-party complaint [Record No. 24] and granted Plaintiff's motion for leave to amend its original

complaint [Record No. 25].  While Plaintiff promptly submitted an amended complaint [Record No. 26] the same day that the order was entered, Defendants failed to amend the third-party complaint as allowed by the Court or file an answer with the counterclaims properly averred in the so-called third-party complaint.  On October 18, 2010, this Court ordered the clerk to enter a default against Defendants [Record No. 28] for failing to answer Plaintiff's amended complaint.  For the third time since the beginning of the litigation, Defendants again failed to file a pleading including the averred counterclaims from the improperly styled third-party complaint.  Instead, Defendants filed on November 8, 2010 a Motion to Set Aside Default [Record No. 34] and an Answer to the Amended Complaint [Record No. 33] admitting and denying portions of the amended complaint and asserting affirmative defenses without any mention of any counterclaims.

Unbeknownst to this Court at the time, three of the four defendants currently before this Court were engaged in other litigation regarding their agreement with Plaintiff.  In Laredo, Defendants' proposed counterclaims, which are currently being considered before this Court, aver that Plaintiff owes them money for breaching an oral agreement.  In the Circuit Court of Jones County, Mississippi ("Mississippi state court"), Evans, Evans Operating, S. Lavon Evans Drilling Ventures LLC, and E & D

Services,[1] sought to recover against their attorneys for legal malpractice in the handling of the business relations between the Evans Defendants and Plaintiff.    In particular, the Evans defendants asserted their attorneys had a conflict of interest as their attorneys also represented Plaintiff.    [Record No 48-6, paras. 12-20].   At trial, Evans testified that Evans Operating entered into a servicing agreement that stated:

> [Plaintiff] shall be obligated to pay to Evans the amount of all invoices presented by Evans for the services rendered provided however that [Plaintiff] may pay such invoices on a monthly basis at the rate of as much as $200,000 per month in total for all invoices; and further provided that if the payment of any invoices by [Plaintiff] would have the result of rendering [Plaintiff] insolvent or bankrupt or, if such payment would render [Plaintiff] unable to meet its obligations as currently due, payments to Evans shall be deferred until the payment of same would not render [Plaintiff] insolvent or bankrupt.

[Record No. 48-2, p. 4](servicing agreement); *see also* [Record No. 48-4, p. 11](Evans testimony at trial).   Thus, Evans and Evans Operating asserted a contract existed and that Plaintiff did not breach the existing contract between them but, rather, that the Evans Defendants' attorneys, who had a conflict of interest, drafted an agreement where a breach was virtually impossible. While E & D Services was not a party to the servicing agreement,

---

[1] For purposes of this Memorandum Opinion and Order, the Court shall refer to Evans, Evans Operating and E & D Services as the "Evans Defendants."

E & D Services averred that the same conflict of interest also caused it harm in its dealings with Plaintiff. *See generally* [Record No 48-11]. The jury found the issues in favor of the Evans Defendants and the Mississippi state court entered judgment on November 4, 2010. [Record No. 48-11] This is in sharp contract to the instant matter, in which, Defendants wish to aver in its proposed counterclaims that Plaintiff breached an oral contract governing the same matters between the parties and never acknowledge the servicing agreement.

As one fight concluded with the Evans Defendants claiming victory, the other fight before this Court was hanging on by a thread with Defendants' Motion to Set Aside Default still pending. Plaintiff filed an Emergency Motion for a Protective Order arguing that Defendants could not conduct discovery on matters outside of damages. [Record No. 39]. In addition, Plaintiffs noted that Defendants still considered their third-party complaint to be an "active" pleading despite the Court's order holding Defendants in default [Record No. 28] which indicated to the contrary.

On January 4, 2011, the Court set aside Defendants' default status, deemed filed Defendants' answer, and made sure Defendants understood these were the only two active pleadings stating that the Defendants "may seek leave to amend their Answer to Plaintiff's Amended Complaint" to add the counterclaims. [Record No. 43, p. 9]. On February 8, 2011, more than a month after the Court

5

instructed Defendants they could seek leave to amend their Answer to include counterclaims, Defendants submitted a "Motion for Leave to File an Amended Answer and Counterclaim to HEI Resources' Amended Complaint" [Record No. 45] and, for the first time since litigation began in November of 2008, filed with this court a proposed "Amended Answer and Counterclaim to HEI Resources' Amended Compaint." [Record No 45-2]. The proposed amended answer and counterclaim included counterclaims similarly styled to those in their improperly styled third-party complaint of April 12, 2010. *Compare id. with* [Record No. 14].

## II. THE COURT WILL NOT GRANT LEAVE TO FILE AN AMENDED ANSWER AND COUNTERCLAIMS

Though a court should "freely give leave" to amend a pleading pursuant to Rule 15, this does not take away from the court the discretion to deny such a request for a substantial reason. Rule 15(a)(2) states "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15. A court, however, may deny the motion for leave based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314-15 (5th Cir. 1996)(citing *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Wimm v. Jack Eckerd*

6

*Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)). Plaintiff argues Defendants' proposed counterclaims are futile and will result in an undue delay.  This Court agrees and shall deny Defendants' motion for leave to amend their answer to include these newly stated counterclaims.

> **A.  Defendants' proposed counterclaims for breach of contract, quantum meruit, civil theft and conversion are futile.**

A court may deny leave to amend based solely on futility provided "that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).  Thus, the court should "apply 'the same standard of legal sufficiency as applied under Rule 12(b)(6).'" *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (5th Cir. 2000)).  Furthermore, a court may grant a motion made under Rule 12(b)(6) if the complaint requests relief that is "barred by an affirmative defense." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *see also Neel v. Rehberg*, 577 F.2d 262, 254 (5th Cir. 1978)("Failure to file an action within the time period provided for in the statute of limitations is an affirmative defense . . . and may be raised by a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6)"); *Cauefield v. Fid. Cas. Co.*, 378 F.2d 876, 879 (5th Cir. 1967)("[T]he district court correctly applied the doctrine of

judicial estoppel in granting the motion to dismiss."). Plaintiff argues that Defendants counterclaims are barred by the affirmative defense of judicial estoppel and the statute of limitations. [Record No. 48]. Defendants argue that Plaintiff could not raise these issues in a motion to dismiss and, as a result, cannot now make the claim that Plaintiff's counterclaims are futile. [Record No. 49, paras. 2, 4]. This argument, however, directly contradicts the law that a Plaintiff may raise affirmative defenses in a Rule 12(b)(6) motion, and both judicial estoppel and the statute of limitations may be considered in determining whether Defendants' counterclaims are futile.

      **1.  The Evans Defendants may not assert a breach of contract and quantum meruit as a result of judicial estoppel.**

The Evans Defendants may not assert before this Court that Plaintiff breached a contract by failing to pay on a servicing agreement having relied on the argument that the servicing agreement that it entered into with Plaintiff made those debts unrecoverable in order to prevail in another lawsuit involving this contract. To begin, federal law applies when considering the equitable doctrine of judicial estoppel as "a federal court should have the ability 'to protect itself from manipulation.'" *Hall v. GE Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 395-96 (5th Cir. 2003)(quoting *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 602-04 (9th Cir. 1996)). Thus, a court may keep a party

8

from asserting a contradictory position to that made in a previous proceeding, under the doctrine of judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)(quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). The Fifth Circuit has "recognized at least two requirements [necessary for a court] to invoke [judicial estoppel]: (1) the party's position must be clearly inconsistent with its pervious one, and (2) the previous court must have accepted the party's earlier position." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 347 (5th Cir. 2008)(citing *Hall,* 327 F.3d at 396). Furthermore, unlike res judicata, the current proceeding need not involve the same litigants from a prior proceeding. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999)(applying judicial estoppel to inconsistent claims made by Plaintiff before the Social Security Administration and against her former employer before the district court); *Barrera v. Ridge*, No. SA-03-CA-299-XR, 2004 U.S. Dist. LEXIS 24617, at *12-18 (W.D. Tex. Dec. 8, 2004)(citation omitted)(applying judicial estoppel to inconsistent claims before the Merit System Protection Board and against his former employer before the district court).

As an initial matter, the Court shall only consider factual assertions made in the Mississippi state court lawsuit. In cases of estoppel, assertions considered for purposes of finding inconsistent positions cannot be opinions but rather, must be factual statements. *Royal Ins. Co. v. Quinn-L Capital Corp.*, 3

F.3d 877, 885 n.6 (5th Cir. 1993)(citing *Strum v. Boker*, 150 U.S. 312, 336-37 (1893)).  As a result, this Court will not consider the expert opinions offered by Defendants' financial experts when determining inconsistent factual assertions for purposes of determining whether to apply the doctrine of judicial estoppel.

    This court will, however, consider the evidence and testimony presented at trial before the Mississippi state court by the parties.  Evans testified in the Mississippi state court that Plaintiff and Evans and Evans Operating were parties to a servicing agreement.  The provision of the servicing agreement in question stated:

> [Plaintiff] shall be obligated to pay to [Evans Operating] the amount of all invoices presented by [Evans Operating] for the services rendered . . . ; [however] if the payment of any invoices by [Plaintiff] would have the result of rendering [Plaintiff] insolvent or bankrupt or, if such payment would render [Plaintiff] unable to meet its obligations as currently due, payments to [Evans Operating] shall be deferred until the payment of same would not render [Plaintiff] insolvent or bankrupt.

[Record No. 48-2, p. 4].  Evans asserted the agreement was meant to confirm the previous oral agreement entered into by Evans and Plaintiff.  [Record No. 48-4, p. 7]; *see also* [Record No. 48-2, p. 3](Servicing Agreement opening paragraph).  Evans also asserted this servicing agreement created accounts receivable payable by Plaintiff to Evans and Evans Operating.  [Record No. 48, p. 11-13](citing Record No. 48-3 to 48-5).  In addition, Evans averred in

his complaint that he knew Plaintiff was insolvent. [Record No. 48-6, at para. 63]. The Evans Defendants also assert throughout their responses to interrogatories in this matter that Plaintiff was insolvent. [Record No. 48-3, p. 21, 22, 30]. Thus, Evans and Evans Operating asserted that the servicing agreement did not allow them to collect on the accounts receivable owed by Plaintiff based on Plaintiff's insolvency not because of a breach. In addition, E & D Services does not dispute and averred in its complaint before the Mississippi state court that their attorney's conflict of interest alone, not Plaintiff's breach of contract, created the damages it now avers before this Court that Plaintiff caused through a breach of contract. *See generally* [Record No. 48-6].

The Mississippi state court accepted the position that the servicing agreement established the relationship between Evans, Evans Operating and Plaintiff and that the accounts could not be collected in accord with the servicing agreement. It also accepted E & D Services' position that the conflict of interest that resulted in the one-sided servicing agreement also caused damages to E & D Services, not a breach of contract by Plaintiff. A court judicially accepts a party's position when it "'necessarily accepted, and relied on' a party's position in making a determination." *Hall v. GE Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 399 (5th Cir. 2003)(quoting *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 836 (5th Cir. 2000)). The Evans Defendants' complaint averred

11

that the legal malpractice of Baker & McKenzie and Joel Held
resulted in actual damages arising out of, among other things, the
unrecoverable accounts covered by the servicing agreement and other
unauthorized business negotiations. *See generally* [Record No. 48-
6]. Furthermore, the Evans Defendants do not dispute that the
Mississippi state court suit arose from "legal malpractice because
[the firm] induced [the Evans Defendants] to execute an instrument
that rendered debts to him unrecoverable." [Record No. 49]. A
financial expert, in describing the legal malpractice and the
servicing agreement at trial, set forth the theory of the Evans
Defendants case as follows:

> Q. Now, did Joel Held and Baker McKenzie
> fulfill the duties [to advise Evans to seek
> other counsel due to the conflict of
> interest]?
> A. No. I don't think so because according to
> Mr. Evans he was counseled to go ahead and
> sign the agreement and perform according to
> these terms. And . . . I think that was not
> good advice . . . .
> . . .
> [because the agreement required Evans] to do
> everything necessary and spend as much money
> as necessary out of his own pocket to do what
> is required of him under this agreement.
> [Plaintiff] could take it's [sic] time paying
> back and could pay him after it paid other
> people if paying him would mean that they had
> [to] short other people.

[Record No. 48-4, p. 26-28]. In addition, a different financial
expert hired by the Evans Defendants submitted a report stating
that any unrecoverable accounts averred by the Evans Defendants
were owed solely to Evans and Evans Operating. [Record No. 48-10,

p. 11].  As a result, under the Evans Defendants theory of the case adopted by the Mississippi state court, E & D Services could only receive damages for the numerous bad business deals forced upon it due to the conflict of interest stated above.  The jury found in favor of the Evans Defendants, and the Mississippi state court entered a judgment in favor of S. Lavon Evans, Jr., S. Lavon Evans, Jr. Operating Co, and E & D Services, Inc.  [Record No. 48-10]. The judgment reflects an acceptance of the above-stated factual assertions as both Evans and Evans Operating received more than $27,000,000 from the law firm and attorney involved in the malpractice while E & D Services, Inc. received $20,000,000. [Record No. 48-11].

The Evans Defendants counterclaim, however, attempts to collect these same accounts that it previously claimed E & D Services were not entitled to pursue and that Evans and Evans Operating claimed were unrecoverable.  [Record No. 45-2].  In doing so, the Evans Defendants base their claim on an oral contract, previously claimed to be the basis of the servicing agreement in the Mississippi state court and fail to acknowledge the existence of the servicing agreement before this Court.  *Id.*  The Evans Defendants argue these inconsistent assertions in the Mississippi state court action and this present action are alternative pleadings allowed under Rule 8(d)(2).  Fed. R. Civ. P. 8(d)(2)("A party may set out 2 or more statements of a claim or defense

alternatively or hypothetically, either in a single court or defense or in separate ones.   If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). This rule, however, only allows a single pleading, **not multiple pleadings**, to contain alternative statements and inconsistency as seen in its title. *Id.* ("Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.")  Thus, Rule 8(d)(2) does not allow for multiple inconsistent averments from different pleadings in different courts.  Applying the doctrine of judicial estoppel, therefore, the Court shall only allow the Evans Defendants to assert in this present action that: (1) the servicing agreement existed and governed relations between Evans, Evans Operating and plaintiff, (2) the servicing agreement made the debts unrecoverable, not Plaintiff's breach of the agreement, and (3) that E & D Services is not entitled to recover accounts receivable from Plaintiff as it was not a party to a contract with Plaintiff regarding these matters, oral or otherwise.

As a result, the Evans Defendants counterclaims for breach of contract and unjust enrichment are futile.   Under Texas law, a plaintiff seeking to recover for breach of contract must establish: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by plaintiff as a result of

the breach."[2]  *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. 2005)(citation omitted).    Furthermore, "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).  Therefore, the Evans Defendants cannot assert a claim under quantum meruit as the Mississippi state court has already determined that a valid contract between Plaintiff and Defendants existed.  No less, the Evans Defendants are estopped from claiming damages arising from breach of contract, as explained above.  As a result, any attempt by the Evans' Defendants to aver a breach of contract or quantum meruit cause of action in their counterclaim is futile. Furthermore, the Defendants do not aver in the proposed counterclaim that Wassau was a party to any agreement with Plaintiff nor that Wassau provided any goods, services or materials to Plaintiff, making any claim by Wassau under breach of contract or quantum meruit futile.  This Court, therefore, will not allow Defendants leave to amend the previous pleading to add the counterclaims for breach of contract and quantum meruit.

>    **2.  The statute of limitations bars Defendants' counterclaims of civil theft and conversion.**

Defendants proposed counterclaim of civil theft and conversion

---

[2] When the court has diversity jurisdiction, it shall apply the substantive law of the forum state. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010)(citation omitted)

will also prove futile as barred by the appropriate statute of limitations. Both conversion and civil theft are governed by a two-year statute of limitations. Tex. Civ. Prac. & Rem. § 16.003 ("a person must bring suit for . . . conversion of personal property, taking or detaining the personal property of another . . . not later than two years after the day the cause of action accrues"); *see also Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 577 (5th Cir. 2010)(citations omitted)(acknowledging that state law applies when considering statute of limitations when the court acts under diversity jurisdiction); *Crownover v. Crownover*, No: 03-02-193-CV, 2002 Tex. App. LEXIS 8770 at *8-11 (Tex. App. Dec. 12, 2002)("Conversion is the civil counterpart of the criminal offense of theft."). "When possession is initially lawful and there is no demand and unqualified refusal, a cause of action for conversion accrues upon the discovery of facts supporting the cause of action, or upon demand and refusal, whichever occurs first." *Varel Mfg. Co. v. Acetylene Oxygen Co.*, 990 S.W.2d 486, 498 (Tex. App. 1999)(citations omitted).

Defendants aver in their complaint that both counts result from the unauthorized sale of their property worth $418,045.80 by Plaintiff in February of 2008. [Record No. 45-2, paras. 67-74](citing Record No. 45-6, p. 1). Plaintiff received a letter dated March 28, 2008 from Defendants instructing Plaintiff not to sell said property to a third party. [Record No. 48-14].

Defendants demanded Plaintiff provide the money received from the sale as well as indicated their intention to void the sale of the property on April 15, 2008. [Record No. 48-18]. Plaintiff refused, asking instead that Defendants provide documentation proving ownership on that same date. [Record No. 48-19]. Thus, the statute of limitations began to toll, at the latest, on April 15, 2008, and any actions based on this conduct filed after April 15, 2010 are barred.

While Defendants' filed their original answer before this deadline, they did not seek to file their amended counterclaim prior to that time. Further, Defendants' claims of civil theft and conversion cannot relate back to their original answer filed before the statute of limitations barred the action. Rule 15(c) allows an amendment to a pleading to relate back to the original pleading if the statute underlying the cause of action allows it, the claim arises out of the same conduct, transaction or occurrences of the original pleading, or under narrow circumstances, if the amendment seeks to change parties or the naming of the parties. Fed. R. Civ. P. 15(c). Plaintiffs' original complaint and Defendants' answer solely addressed Plaintiffs' averred causes of action for breach of contract, civil conspiracy and alter ego/piercing the corporate veil involving loans, back rent and other expenditures Plaintiff avers Defendants owe to Plaintiff. [Record No. 1]; [Record No. 33]. Neither the complaint nor the answer mentions the property

17

averred by Defendants to have been involved in an unauthorized sale, let alone a cause of action based on civil theft or conversion averred in Defendants' proposed counterclaim.   Thus, Defendants proposed counterclaims relating to civil theft or conversion do not relate back to their earlier filed answer and any attempt to raise these claims now is barred by the statute of limitations.   Therefore, the Court will not grant Defendants leave to amend their answer as any counterclaim based on civil theft or conversion is barred by the statute of limitations and futile.

**B.    Defendants have also exhibited bad faith and a dilatory motive in attempting to add its counterclaim.**

As to the final proposed counterclaim by Wausau against Plaintiff for breach of contract – failure to pay a working interest owner, the Court shall not grant leave to amend Defendants' answer to include this counterclaim as Wausau's repeated failures to properly include this counterclaim in its answers has produced an undue delay resulting from, at the least, a dilatory motive on their part.   The Fifth Circuit has held when a Plaintiff knows the circumstances giving rise to a potential claim and chooses not to assert it until more than a year later, "an inference of bad faith, justifying the denial of leave to amend" may arise.   *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 140 (5th Cir. 1993)(citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (5th Cir. 1981)).   Most striking in this case is the similarity between Wausau's original attempt to file a counterclaim in April

18

of 2010 against Plaintiff for breach of contract for failing to pay a working interest owner and their most recent attempt ten months later. *Compare* [Record No. 14, paras. 54-57] *with* [Record No. 45-2, paras. 63-66]. With the exception of the titles of the parties, Wausau has used the exact same language in its proposed counterclaims. Wausau has also affirmatively pled that the failure and refusal to pay Wausau its working interest share began in February 2007. *See* [Record No. 14, para. 56]; [Record No. 45-2, para. 65]. Furthermore, since the filing of the complaint in November 2009, Wausau has had three opportunities to file an answer with the asserted counterclaim against Plaintiff properly included. *See supra* Part I. Each time, Wausau has failed to do so.[3] *See* [Record No. 9](original answer); [Record No. 24](order granting leave to amend third-party complaint to a proper counterclaim never acted upon for three months); [Record No. 33](answer to amended complaint). This repeated failure to include a claim that Wausau knew of at least 10 months ago, likely much earlier based on Wausau's averments in its counterclaim, gives rise to an inference of bad faith and dilatory motive.

Wausau's delay in filing this latest motion weakens Wausau's request for leave to amend its complaint even further. While Wausau

---

[3] Wausau attempted to file these claims as part of an improper third-party complaint, now stricken from the record as improper under the Federal Rules of Civil Procedure. *See* [Record No. 14]; [Record No. 28]; [Record No. 43].

argues that refusing to grant its motion "render[s] meaningless this court's prior order setting aside [Defendants'] default for not filing an answer to HEI's amended complaint," Wausau is in error. [Record No. 49, para. 9]. The Court in its previous order stated that Defendants "may seek leave to amend their Answer to Plaintiff's Amended Complaint" but did not say that it would grant it. [Record No. 43, p. 9]. While Defendants made few alterations to the averments made in its previously improperly filed third-party complaint [Record No. 14] when compared to their averments in Defendants' newly proposed counterclaims [Record No. 45-2], Defendants waited over a month to file a motion requesting leave to file the proposed counterclaims. *See* [Record No. 43](order allowing Defendants to seek leave filed January 4, 2011); [Record No 45](motion for leave to amend filed February 8, 2011). Though within the deadlines of the scheduling order, Defendants attempt to amend the complaint to include new claims almost two and a half weeks after the close of discovery and less than a month before the deadline for contested motions show at the least a dilatory motive. As a result, this Court shall not grant Wausau's motion for leave to add a counterclaim for breach of contract – failure to pay a working interest owner.

## III. CONCLUSION

As set forth above, **IT IS ORDERED**:

(1) that Evans' Motion for Leave to File an Amended Answer

and Counterclaim to HEI Resources' Amended Complaint [Record No. 45] is **DENIED**.

This the 29th day of March, 2011.



Signed By:

_**Joseph M. Hood**_

Senior U.S. District Judge

SITTING BY DESIGNATION

21